TAYLOR, RESPONDENT, v. RANN, APPELLANT.

(No. 7,757.)

(Submitted April 18, 1938. Decided May 9, 1938.)

[80 Pac. (2d) 376.]

*Messrs. Duncan & Duncan, Mr. William A. Brown* and *Mr. John G. Brown,* for Appellant, submitted an original and a supplemental brief; *Mr. M. M. Duncan* and *Mr. John G. Brown* argued the cause orally.

*Mr. Frank E. Blair,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

HONORABLE CHARLES B. ELWELL, District Judge, sitting in place of MR. JUSTICE STEWART, disqualified, delivered the opinion of the court.

This action was brought by the plaintiff, Bessie Taylor, against the defendant, Clyde W. Rann, to recover damages, actual and punitive, on account of an alleged seduction of the plaintiff by the defendant, and resulted in a verdict and judgment in favor of the plaintiff for both actual and punitive damages.

The evidence of the plaintiff disclosed that the plaintiff was the niece of the defendant's wife; that the defendant and the aunt of plaintiff had married in 1934, and had at all times since been husband and wife, and that the families of plaintiff and defendant lived only a few miles apart. In support of her allegation as to the seduction, the plaintiff testified that during her fifteenth year, and shortly before her sixteenth birthday, the defendant began to pay attention to her, and from then on kissed and petted her, gave her various gifts, including money and a ring, told her that he was leading a loveless life and wished to marry her. The plaintiff admitted, of course, that she at all times knew of the marriage of the defendant. The first act of sexual intercourse was testified to have occurred in September, 1932, while plaintiff was in her twentieth year. The plaintiff taught school much of the time thereafter, and numerous acts of intercourse are related from then on up to about the first of November, 1935. Plaintiff testified to the continuation of the promises of marriage, secret meetings, trips, and plans for a divorce by defendant from his wife, the plaintiff's aunt. Voluminous correspondence was introduced to substantiate her statements. Matters progressed to a point where defendant sold out his business, made a very substantial settlement with his wife, apparently without divulging to his wife his intention of seeking a divorce or his exact purpose. A divorce action was actually started about the first part of November, 1935, by the defendant, and about the same time plaintiff lost her position as a school teacher and set out to find the defendant, who appeared to be in hiding from his wife and had given the plaintiff some information as to his probable whereabouts. The wife of the defendant was prostrated when served with the papers in the divorce action. The defendant learned of this, returned to his wife, and a reconciliation took place. It is unnecessary to relate the scenes which took place between the two families immediately following this, but within a few days thereafter this action was filed by the plaintiff. The plaintiff was married to Harold McDowell on February 20, 1936, subsequent to the filing of this action and prior to the time of trial.

The record and exhibits are voluminous, and there are thirty assignments of error. Many of them are more or less a matter of repetition, and many of them need not be noted here.

The defendant and appellant assigned error upon the refusal ▉ of the trial court to dismiss the action for the reason that the plaintiff had married between the time of the commencement of the action and the trial, and that she was still a married woman at that time. Appellant bases this contention upon section 9073, Revised Codes, which reads as follows: "An unmarried female may prosecute as plaintiff an action for her own seduction and may recover therein such damages, pecuniary or exemplary, as are assessed in her favor." The contention of appellant is that the legislature, by using the word "prosecute" in this section, barred the plaintiff from continuing with her action after marriage, although it did not preclude her from filing it before her marriage. In short, appellant contends that the action abated immediately upon plaintiff's marriage.

In construing a statute substantially the same as our section 9073, the supreme court of Indiana held that the term "unmarried," as used in the statute, related to plaintiff's status at the time of the seduction, and not the time of the filing of the action or the trial of the action. (*Dawling* v. *Crapo*, 65 Ind. 209.) We do not feel that our present-day laws favor abatement of actions once a cause has accrued, and our statute covering abatement of actions, section 9086, Revised Codes, does not lend any assistance to appellant's contention.

One of the most serious questions in the case is presented by ▉ appellant's plea of the statute of limitations. Section 9032, Revised Codes, paragraph 3, provides a two-year limitation in actions for libel, slander, assault, battery, false imprisonment or seduction.

While the plaintiff claims certain relationship with the defendant and certain promises and representations made by the defendant to the plaintiff as far back as her fifteenth year, there is no act of seduction shown until her twentieth year, or in September, 1932. The defendant and appellant contends that the seduction took place at that time; that the statute of

limitations then started to run, and that therefore the action was barred. Plaintiff and respondent, on the other hand, contends that there were continuing acts of seduction, induced by the promises of marriage, the last act being about the first of November, 1935, and that the statute of limitations did not start to run until plaintiff and defendant broke off their relationship. Under respondent's contention, this particular action would not be barred until over five years after the first act by which she claims to have been seduced, although as a matter of fact the action was brought within a week or so after the breaking off of the relations between the parties, but more than three years after the first act of intercourse took place.

The matter is one of first impression in the state of Montana. There are two distinct lines of decisions,—one supporting the appellant's contention, and the other supporting the respondent's position.

While the case of *Rockwell* v. *Day,* 101 Wash. 580, 172 Pac. 754, is not strictly in point for the reason that in the case in question there had been a breaking off of the relations and a subsequent resumption thereof by the parties, and the statutory period had run from the time of the breaking off of the first relationship of the parties, still there is a well considered discussion of the two lines of decisions, worthy of repetition here: "Plaintiff insists that the better rule is that the statute does not begin to run where improper relations are begun under a promise of marriage, so long as the relations are continued or until the last act of intercourse; that all the acts of intercourse are one transaction; and that a continued promise of marriage is implied from time to time. She relies on *Davis* v. *Young,* 90 Tenn. 303. * * * The general rule as most text-writers agree, is that the statute begins to run from the time of the seduction where the action is maintained by the woman on her own behalf. (Wood on Limitations (2d ed.), sec. 186.) * * * But whether we call the one or the other the general or the better rule, it must be admitted that there is a very marked conflict of authority. We could base our opinion on either rule and sustain it by sound reason, for if the one rule

protects the artless and confiding female, the other protects the man from the artful pretensions of women who may pretend to have been seduced in order to obtain a pecuniary compensation."

The court further proceeded to voice the opinion that in certain states where one rule had first been adopted and then abandoned in favor of the other, it appeared that the court had adopted in each instance the rule which fitted the side to which the apparent equities or perhaps sympathies belonged. We do not feel, however, that we would be justified in adopting one rule for one case involving continuing relations, and another for some subsequent case involving the same question but different parties, simply to fit our own notion as to the equities of the case.

In *Davis* v. *Boyett,* 120 Ga. 649, 48 S. E. 185, 102 Am. St. Rep. 118, 66 L. R. A. 258, the court held that the right of action accrues and the statute of limitations becomes operative thereon with the first act of sexual intercourse. The court in this case said: "Some courts, while recognizing the rule that the limitation of the statute begins to run against an action for seduction from the time of the seduction, have held that seduction may be a continuous act, which is not completed with the first sexual intercourse, and that in such a case the statute will begin to run from the last, and not the first, act of sexual intercourse. This is the rule now established in Tennessee, although the supreme court of that state first held to the contrary."

In *Franklin* v. *McCorkle,* 16 Lea, 609, 1 S. W. 250, 57 Am. Rep. 244, it was held that in an action for seduction " 'the offense is complete, and the cause of action accrues, and the statute becomes operative thereon with the first act of sexual intercourse.' Later, however, this case was overruled (one judge dissenting), and it was held that in an action for seduction 'the averments that the acts constituting the wrong complained of were committed under a promise of marriage, and that such promise was continued and renewed from time to time to a period less than twelve months (the statutory limitation) before the bringing of the suit, saves the bar' of the statute. (*Davis* v. *Young,* 90

Tenn. 303, 16 S. W. 473.)   \*  \*  \*   It will be seen that none of these various cases, however much they may differ with each other in other respects, conflict with the rule that, when the suit is primarily for the seduction and not for loss of service, the statute begins to run when the act of seduction is complete. In the case with which we are dealing it is distinctly alleged by the amendment to the petition that the act of seduction was committed on the 2d day of June, 1899; and, were it otherwise, we do not think we would feel disposed to follow the courts of Tennessee and Indiana in holding that the act of seduction may be continued after the female seduced has lost her virtue. We apprehend that it would be very difficult to apply such a principle to a criminal case in which the statute of limitations was pleaded to an indictment for seduction, so as to avoid the bar of the statute, upon the ground that the act of seduction had been continuously performed for a considerable length of time after the first act of sexual intercourse between the accused and his alleged victim.''

Laying aside any question of sympathy in such cases, it is ▮ a well-established rule that courts cannot make exceptions to the statute of limitations in favor of particular persons or special cases, or to meet the hardships resulting from its application to the facts of a given case. The legislature has defined seduction, and created the right of action in the plaintiff. It has likewise placed upon the statute books a law limiting the right of action to a certain period. It is not the province of this court or of any other court to assume to legislate by judicial interpretation, and to create in favor of any individual or any class of people an exception to the limitation set by the legislature. The legislature could, at the time the law was passed, have created, and still can create, such an exception. The legislature intended to create a rule of limitation applicable to all actions for seduction, and it is not for this court to adopt an interpretation of that statute which may be influenced, either in whole or in part, by the age, innocence, or circumstances by which the seduction was procured.

Practically all of the cases which have extended the bar of limitations by judicial interpretation, have relied on the fact that the inducement leading to the consummation of the seduction was a promise of marriage. Our legislature was aware of the fact that a promise to marry was often one of the inducements leading to seduction. In fact, the promise of marriage as an inducing cause is specifically set forth in our criminal statute, section 11007, Revised Codes. The legislature was, therefore, in a position to make its own exceptions to the rule, had it so desired.

Section 10519, Revised Codes, provides: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted, * * * ." If we were inclined to extend this statute by judicial interpretation, in cases involving a promise of marriage, where would we stop? Would we confine it to cases where the man was unmarried, or would we still further broaden it to include cases where the man was married but the female was ignorant of that fact; or should we still further relax the rule to include cases where the man was married and the woman was fully aware of that fact, simply because the man represented he did not any longer love his wife? Should we set up one rule for people of one age, and another for people of a greater age and more mature thinking? And if we should be inclined to make such exception, then how long shall the court extend the limitation? Courts which have extended the time by judicial construction have simply said that the statute shall not run until the last act of intercourse, assuming a continuing promise of marriage. Does that mean one year, five years, ten years, or more? When is this act of seduction completed? And if we extend it to cases where the woman has full knowledge that the man is married, how long shall we say that a woman may consort with a married man, relying on an unfulfilled promise that the man will divorce his wife and marry her, and at the same time retain her virture or chastity which is presumed to make her the victim of the seduc-

tive arts of the man? The legislature has created a definite and certain way of determining the time limit upon such actions. Any attempt on our part to extend it by judicial interpretation would simply add uncertainty of what this court might do in the future to uncertainty as to what we mean at this time.

It is the holding of this court that the action was barred by the statute of limitations, and the judgment is therefore reversed and the cause remanded to the district court with instruction to dismiss the action.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.

Rehearing denied June 11, 1938.